UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COWBOY WORLD CORP.,

Petitioner,

v.

PAMELA BONDI, ATTORNEY GENERAL
OF THE UNITED STATES, and JOSEPH
EDLOW, USCIS DIRECTOR,

Respondents.

No. 24-CV-9929 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioner Cowboy World Corp. ("Petitioner") brings this action against Pamela Bondi, the Attorney General of the United States, and Joseph Edlow, the Director of U.S. Citizenship and Immigration Services ("USCIS") (collectively, "Respondents")[1] seeking to compel Respondents to accept and adjudicate Petitioner's Immigrant Petition for Alien Workers ("I-140").  Pending before the Court is Respondents' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the following reasons, the motion is granted.

## BACKGROUND

The Court draws the following facts from the Petition and documents attached to it.  Well-pleaded facts are assumed to be true for purposes of resolving the pending motion to dismiss.  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

On August 30, 2024, Petitioner concurrently filed forms I-140, I-485 (Application to Register Permanent Residence or Adjust Status), I-765 (Application for Employment

---

[1] Petitioner originally filed this action against Merrick Garland, the former Attorney General of the United States, and Tracy Renaud, the former Acting Director of USCIS.  Pursuant to Fed. R. Civ. P. 25(d), Attorney General Pamela Bondi is substituted for Merrick Garland, and USCIS Director Joseph Edlow is substituted for Tracy Renaud.

Authorization), and I-131 (Application for Travel Documents, Parole Documents, and Arrival/Departure Records) to USCIS for the benefit of one of its employees.  Petition ("Pet.") ¶ 9, Ex. A.  Along with its applications, Petitioner also filed a form G-1450 (Authorization for Credit Card Transaction), authorizing USCIS to charge Petitioner's credit card for required application fees.  *Id.* ¶ 11, Ex. B.  The labor certification filed with Petitioner's I-140 expired on September 2, 2024.  Pet. ¶ 10.  USCIS did not receive Petitioner's filings until September 3, 2024, though according to Petitioner, because September 2, 2024 was a federal holiday, USCIS would have deemed its I-140 application timely.  *Id.*  In any event, unbeknownst to Petitioner at the time, American Express ("Amex"), the company that issued the credit card included on Petitioner's G-1450, put a hold on the $300 "Asylum Program Fee" required for Petitioner's I-140 filing.  *Id.* ¶ 11, Ex. A.  Amex successfully processed the other required fees.  *Id.*  While Amex removed the hold shortly thereafter, USCIS's Lockbox, the secure facility that USCIS uses to facilitate the collection and deposit of fees, did not make a second attempt to charge the $300 Asylum Program Fee.  *Id.* ¶ 12.

On September 6, 2024, USCIS issued a Rejection Notice to Petitioner, informing it that its I-140 was being returned because its G-1450 was "invalid due to incomplete information and/or the credit card information supplied by [it] was denied."  Pet. ¶ 13, Ex. B.  The Rejection Notice further stated: "Please be sure to complete the petition fully, submit the appropriate fees, and include all required supporting documentation."  *Id.* Ex. B.  Petitioner resubmitted its I-140 on September 18, 2024 together with the applicable fees.  *Id*. ¶ 15.  On September 23, 2024, USCIS issued a second Rejection Notice to Petitioner, rejecting its resubmission of the I-140 because the underlying labor certification had expired.  *Id.* ¶ 16, Ex. C.

Petitioner commenced this action on December 26, 2024, seeking a writ of mandamus

2

compelling Respondents to accept and adjudicate its I-140.  *See id.*  Respondents now move to dismiss this action for failure to state a claim.  *See* Dkt. No. 20.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a Rule 12(b)(6) motion, a court must "construe[] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor,"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), but it will not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### II.    The Mandamus Act

Pursuant to 28 U.S.C. § 1361, a federal court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The writ of mandamus is among "the most potent weapons in the judicial arsenal."  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).  "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes a 'clear nondiscretionary duty.'"  *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  As such, mandamus "may be awarded only if the plaintiff

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, and footnotes and adopt all alterations.

proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir. 2008).

### III.    The Administrative Procedure Act

The Administrative Procedure Act (the "APA") directs courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). Judicial review under the APA does not apply if "agency action is committed to agency discretion by law." 5 U.S.C. § 706(a)(2). Under the APA, the Court can only compel an agency to take an action "that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

### DISCUSSION

Respondents argue that Petitioner fails to state a claim on which relief can be granted because USCIS properly rejected Petitioner's I-140 filings consistent with the express requirements of the governing regulations. A brief overview of the relevant statutory and regulatory framework is helpful here.

In the Immigration and Nationality Act (the "INA"), "Congress created five 'preference' categories for employment-based visas." *Kapoor v. U.S. Citizenship & Immigr. Servs.*, 763 F. Supp. 3d 247, 250 (E.D.N.Y. 2025) (citing 8 U.S.C. § 1153(b)). One of the categories is for skilled workers and professionals. 8 U.S.C. § 1153(b)(3). The INA "provides a three-step process for a noncitizen to become a permanent resident by obtaining an employment visa." *Hsiao v. Scalia*, 821 F. App'x 680, 682 (9th Cir. 2020) (providing overview of the three steps required for obtaining permanent residence through employment-based immigrant visa). First, Petitioner—the employer

of the noncitizen beneficiary—must obtain a labor certification from the Department of Labor (the "DOL"). *See* 8 U.S.C. §§ 1182(a)(5)(A), § 1153(b)(3)(C). The labor certification is only valid for 180 days. *See* 20 C.F.R. § 656.30(b)(1); *Durable Mfg. Co. v. U.S. Dep't of Lab.*, 578 F.3d 497, 502 (7th Cir. 2009) ("[A] labor certification expires if not filed in support of a visa application within 180 days of the certification's approval."). Second, Petitioner must file a form I-140 with USCIS along with supporting documents, including the labor certification approved by the DOL. *See* 8 C.F.R. § 204.5; *Hsiao*, 821 F. App'x at 682. Third, the noncitizen employee must file a form I-485 with USCIS to apply for permanent residence. *See* 8 U.S.C. § 1255; 8 C.F.R. § 245.2(a)(3)(ii); *Hsiao*, 821 F. App'x at 682. An I-485 can also be filed concurrently with an I-140. 8 C.F.R. § 245.2(a)(2).

In addition, "[e]ach form, benefit request, or other document must be filed with the fee(s) required by regulation." 8 C.F.R. §§ 103.2(a), 245.2(a)(2). Specifically, "the Asylum Program Fee must be paid by any petitioner filing . . . an Immigrant Petition for Alien Worker, Form I-140." 8 C.F.R. § 106.2(c)(13). "A benefit request will be rejected if it is not . . . [s]ubmitted with the correct fee(s)." 8 C.F.R. § 103.2(a)(7)(ii).

Respondents argue that USCIS's rejection of Petitioner's I-140 filings was proper. Mot. at 8. Per USCIS's September 6, 2024 Rejection Notice, USCIS rejected Petitioner's first filing because the credit card on Petitioner's form G-1450 was denied. Pet., Ex. B. According to Petitioner, this denial was because Amex put a hold on the required $300 Asylum Program Fee. *Id.* ¶ 11. Petitioner contends that it submitted its G-1450 authorizing the correct amount of fees, and that "[a] declined credit card . . . does not automatically constitute an incorrect filing fee under 8 C.F.R. § 103.2(a)(7)(i)." Opp'n to Mot. to Dismiss ("Opp'n") at 1–2. Petitioner further asserts that USCIS "failed to make a second attempt to process the payment, in direct contradiction to the

regulatory guidance," thus excusing its non-payment. *Id.* at 2. Petitioner misreads the regulations. The plain language of 8 C.F.R. § 103.2 states that "[c]redit cards that are declined for any reason will not be resubmitted" and that "any immigration benefit request or request for action filed with USCIS may be rejected or denied" in this situation. 8 C.F.R. § 103.2(a)(7)(ii)(d)(3). There is no exception in the regulation for a third-party's failure to process a payment. Therefore, Petitioner's argument contradicts the express provision of the governing regulation.

Petitioner's reliance on *Blanco v. Holder*, 572 F. 2d 780 (9th Cir. 2009) and *Lee v. Holder*, No. 08 Civ. 664 (E.D.N.Y. March 10, 2010) is inapposite. Both cases deal with unsigned checks. Because there is a more specific rule governing declined credit cards, 8 C.F.R. § 103.2(a)(7)(ii)(d)(3), these cases addressing unsigned checks under other provisions have no bearing here.

Petitioner next argues that the declined Asylum Program Fee was "not directly tied to the adjudication of the Petitioner's case" and that Petitioner "fully paid all other fees that are directly applicable to their benefit request." Opp'n at 2. There is no basis, however, to draw any distinction between the Asylum Program Fee and the other fees that were successfully transacted. The Asylum Program Fee, like all the other fees, is a fee "required by regulation." 8 C.F.R. § 103.2(a)(1), § 106.2(c)(13). Accordingly, failure to pay the Asylum Program Fee is a sufficient ground for the rejection of Petitioner's I-140. 8 C.F.R. § 103.2(a)(7)(ii)(D).

Because USCIS properly rejected Petitioner's first I-140 submission, USCIS cannot be compelled to accept Petitioner's resubmission of the I-140 with an expired labor certification. The regulation is clear: "A benefit request which is rejected will not retain a filing date." 8 C.F.R. § 103.2(a)(7)(ii); *see Espindola v. U.S. Dep't of Homeland Sec.*, 2021 WL 3569840, at *1 (N.D.N.Y. 2021). Because USCIS properly rejected Petitioner's first I-140 filing, the original

6

filing date is not retained for Petitioner's second filing.  It is undisputed that when Petitioner re-filed its I-140 on September 18, 2024 with the applicable filing fees, the underlying labor certification had already expired.  Pet. ¶¶ 10, 15.  Therefore, USCIS also properly rejected Petitioner's second filing of the I-140 because it was not filed with a valid labor certification, as required by law.  Pet., Ex. C; *see* 8 U.S.C. § 1153(b)(3)(C); 20 C.F.R. § 656.30(b)(1); *Espindola*, 2021 WL 3569840 at *4–5 (USCIS properly rejected unsigned visa petition submitted timely and could not be compelled to accept signed petition resubmitted after deadline).

Petitioner's contention that USCIS's rejection of its resubmission "contradicts the principle of estoppel," Pet. ¶ 16, is unavailing.  Petitioner reads USCIS's September 6, 2024 Rejection Notice to imply its "willingness to accept the resubmission" despite the invalidity of the labor certification.  Pet. ¶ 14.  This reading belies the plain language of the Rejection Notice, which simply states, *inter alia*, "[p]lease be sure to complete the petition fully, submit the appropriate fees, and include all required supporting documentation."  Pet., Ex. B.  There is no indication that USCIS would be willing to accept and adjudicate Petitioner's resubmitted petition filed with an invalid labor certification.  To the contrary, the Rejection Notice reminded Petitioner to file the petition with "all required supporting documentation," which would include a new valid labor certification, as legally required.

In any event, "[t]he doctrine of equitable estoppel is not available against the government except in the most serious of circumstances . . . and is applied with the utmost caution and restraint . . . . Specifically, estoppel will only be applied upon a showing of affirmative misconduct by the government." *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 126 (2d Cir. 2000).  Petitioner fails to make any such showing here.  The Rejection Notice therefore does not estop USCIS from

following the statute and its own regulations.

Finally, Petitioner alleges that USCIS's rejection of its second I-140 filing violates the APA because it "did not carry out the adjudicative functions delegated to [it] by law with regard to Petitioner's case." Pet. ¶ 18. But Petitioner "fails to state a claim under the APA because [it] has not alleged circumstances making the denial of his Application unlawful." *Pineda Suero v. U.S. Dep't of Homeland Sec.*, 2019 WL 1557130, at \*5 (S.D.N.Y. Apr. 10, 2019) (dismissing plaintiff's complaint challenging denial of his application to adjust his status and requesting writ of mandamus). As discussed above, USCIS followed its own regulations and properly rejected Petitioner's I-140 filings. "USCIS's failure to depart from its own regulations in order to accept a deficient petition is not arbitrary, capricious, or an abuse of discretion [under the APA]." *Espindola*, 2021 WL 3569840, at \*5 (N.D.N.Y. 2021) (citing *Mutasa v. U.S. Citizenship & Immigr. Servs.*, 531 F. Supp. 3d 888, 900 (D.N.J. 2021)).

In sum, Petitioner fails to allege entitlement to the writ of mandamus because Petitioner "has not alleged facts on which he has 'a clear right to the relief sought.'" *Pineda Suero*, 2019 WL 1557130, at \*5 (quoting *Benzman*, 523 F.3d at 133). Petitioner also fails to state a claim under the APA. Accordingly, Respondents' motion to dismiss is granted. The Court recognizes the rigidity of the regulations and appreciates the harsh results Petitioner faces due to a seemingly small and unexpected error. Neither the Mandamus Act nor the APA, however, bestows the Court with power to compel USCIS to adjudicate a defective I-140 filing.

## CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 20, enter judgment for Respondents, and close the case.

SO ORDERED.

Dated:    November 25, 2025
          New York, New York

Ronnie Abrams
United States District Judge